2001 WY 129

**Lynn LEE, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 00–253.

Supreme Court of Wyoming.

Dec. 17, 2001.

1134

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Assistant Appellate Counsel; Diane Courselle, Director of the Wyoming Defender Aid Program; and Justin Kallal and Sean Minahan, Student Interns, Representing Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Robin Sessions Cooley, Senior Assistant Attorney General, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Lynn Lee was charged with five counts of third-degree sexual assault and two counts of immodest, immoral, or indecent acts with a minor. He pleaded guilty to two counts of third-degree sexual assault—Counts III and V—and was initially sentenced to consecutive prison terms of not less than twelve years nor more than fifteen years. He appealed claiming his sentence on Count V was illegal because there was insufficient evidence that the crime occurred after July 1, 1997, when the maximum sentence was increased from five years to fifteen years. He also asserted the court improperly drew negative inferences from his refusal to submit to a psychological evaluation prior to sentencing. We reverse and remand the portion of the corrected sentencing order which removed credit for presentence confinement as to Count V and affirm in all other regards.

## ISSUES

[¶ 2] Mr. Lee frames the issues on appeal as follows:

*ISSUE I*

Did the trial court illegally sentence Mr. Lee as if his offense occurred after July 1997, even though the State failed to establish when the act occurred?

*ISSUE II*

Did the trial court abuse its discretion when applying sentence to Mr. Lee by forming adverse inferences against Mr. Lee for invoking his Fifth Amendment right against self-incrimination?

*ISSUE III*

Is the sentence reflected in Mr. Lee's written Order of Sentence illegal as it is inconsistent with the order given in open court?

*ISSUE IV*

Did the trial court err in failing to give Mr. Lee [c]redit for pre-sentence confinement on both counts for which he was convicted?

The State of Wyoming states the issues as:

I. Whether the sentence entered by the trial court on Count V is a legal sentence, as the record reveals sufficient evidence for the court to determine when the offense occurred?

II. Whether the trial court abused its discretion at sentencing when it considered Appellant's refusal to undergo a psychological assessment?

III. Pursuant to W.R.A.P. Rule 3.01, the record has been corrected to reflect the sentence actually imposed by the trial court, which is a legal sentence.

IV. Whether the trial court erred in correcting its order to reflect pre-sentence confinement credit toward one of two consecutive sentences?

## FACTS

[¶ 3] Mr. Lee, who was forty years old at the time of his arrest, engaged in sexual activity with several minors over a period of years. As one of the minors, SB, attempted to extricate himself from the relationship, Mr. Lee resorted to stalking the young man until he was apprehended by the police. While the police investigated the stalking charge, a sordid story emerged involving the long-term sexual abuse of two minor broth-

ers, SB and LB, whose family Mr. Lee had purposely befriended. A detailed factual chronology of events was contained in the affidavit of probable cause which was served on Mr. Lee together with the arrest warrant setting forth the charges. Mr. Lee met the family in 1993 through church activities and became a trusted friend, helping them remodel their home and attending many family activities. SB, who was approximately thirteen years old, began spending time alone with Mr. Lee who used SB's interest in rock climbing to develop a close friendship and provide justification for their unsupervised climbing trips. Ultimately, SB's younger brother, LB, was also subjected to Mr. Lee's sexual advances, as was another minor, BB, who was not related to the brothers.

[¶ 4] Mr. Lee was charged with five counts of third-degree sexual assault and two counts of taking immodest, immoral, or indecent liberties with a minor. The crimes were alleged to have occurred over a period of several years.[1] Prior to arraignment, Mr. Lee entered into a plea agreement pursuant to which he pleaded guilty, with no provision regarding sentencing, to Counts III and V which charged separate counts of third-degree sexual assault. Count III alleged sexual intrusion with SB between March 21, 1995, and September 21, 1995, when SB was fourteen years of age, in violation of § 6–2–304(a)(i) of the Wyoming statutes. Count V alleged sexual intrusion with LB between October 4, 1996, and December 31, 1998, when he was eleven through thirteen years of age, also in violation of § 6–2–304(a)(i). At arraignment, the district court reviewed the charges and questioned Mr. Lee to confirm his complete understanding of those charges and the factual basis for them. With regard to Count V, the sexual assault of LB, the following exchange took place:

THE COURT: Okay. Going to Count [V], this apparently involved somebody whose initials are LB. Do you know who I'm talking about when I refer to LB?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Okay. And do you know LB's birth date?

THE DEFENDANT: Yes, I do.

THE COURT: It says here it was October 4, 1985; is that correct?

THE DEFENDANT: To the best of my knowledge, yes.

THE COURT: All right. It says these events occurred between October 4, 1996 and December 31, 1998. Is that accurate?

THE DEFENDANT: I believe so, yes.

THE COURT: Can you tell me more definitely than that when these events occurred with [L]B?

THE DEFENDANT: No, I cannot.

THE COURT: That's a range of almost two years. You can't be more specific than two years?

THE DEFENDANT: No, I can't.

[¶ 5] Attempting to further clarify the date the events in Count V occurred, the district court continued:

THE COURT: Okay. Now, LB, who is younger, how many times did you have sexual contact with him?

THE DEFENDANT: Much fewer. It was only a couple instances.

THE COURT: Okay. So this would be one of two incidents that we're talking about here?

THE DEFENDANT: Yeah, of three or four.

THE COURT: Three or four?

---

1. Count I alleged sexual assault in the third degree of BB occurring between June 21, 1995, and September 21, 1995.

Count II alleged immodest, immoral, or indecent acts involving BB occurring between August 21, 1997, and December 21, 1997.

Count III alleged sexual assault in the third degree of SB occurring between March 21, 1995, and September 21, 1995.

Count IV alleged immodest, immoral, or indecent acts involving SB occurring between September 21, 1997, and June 21, 1998.

Count V alleged sexual assault in the third degree of LB occurring between October 4, 1996, and December 31, 1998.

Count VI alleged sexual assault in the third degree of LB occurring between September 21, 1996, and December 21, 1998.

Count VII alleged sexual assault in the third degree of LB occurring between October 4, 1996, and December 31, 1998.

THE DEFENDANT: Yes.

THE COURT: Well, was it one or two or three or four?

THE DEFENDANT: Three or four.

. . . .

THE COURT: All right. Tell me about one of them that occurred between this—did—well, first of all, did they all occur between October 4, '96 and December 31, '98?

THE DEFENDANT: Yes, sir.

The district court also fully informed Mr. Lee that the maximum penalty for the charge of third-degree sexual assault was fifteen years in prison and by pleading guilty he would be forfeiting his rights to a jury trial, to require the state to prove its allegations, to put on evidence, and to contest the state's case.

[¶ 6] The affidavit of probable cause, which was attached to the warrant served on Mr. Lee, contained the detailed statement LB made to the investigating officer concerning the sexual assaults including the fact they occurred through the fall of 1998 until LB's parents began to regulate the time he spent with Mr. Lee. The affidavit also contained a summary of BB's statement to the officer that he witnessed the assaults on LB in the fall of 1997 when he returned to Gillette upon release from the Wyoming Boys' School.

[¶ 7] Subsequent to arraignment, the state filed a motion for a personality/psychological assessment for use during sentencing. Mr. Lee objected to the assessment. A hearing was held and briefs were filed by both parties concerning whether Mr. Lee could be forced to submit to such an assessment. The district court ultimately concluded Mr. Lee had the constitutional right to refuse to undergo such an assessment. However, the district court informed Mr. Lee his refusal would be taken into account in the course of sentencing.

[¶ 8] At the sentencing hearing, the district court considered additional evidence including the presentence investigation (PSI) report prepared according to W.R.Cr.P. 32(a) which included the affidavit of probable cause and the counselors' interviews of LB concerning the assaults occurring through the fall of 1998. On behalf of Mr. Lee, counsel submitted Mr. Lee's twenty-two-page hand-written letter commenting on facts contained in the PSI report and the affidavit of probable cause in which he noted the inaccuracies he observed and provided his version of the facts. In the cover letter to the district judge, counsel specifically requested the letter be considered "Defendant's Version" of the offenses charged and included on page ten of the PSI report under the appropriate heading. Counsel further remarked that Mr. Lee did not give his letter directly to the probation and parole agent because he did not trust that individual to include it in the PSI report as it had been written. In the letter, Mr. Lee vociferously asserted that the assaults on LB could not have occurred any earlier than two years prior to his arrest, which would have been the spring of 1998. He claimed this time frame could be confirmed by determining when he purchased a certain couch upon which the assaults apparently took place. At the conclusion of the hearing, the district court orally sentenced Mr. Lee pursuant to his guilty plea to Counts III and V to two separate incarceration terms of twelve to fifteen years to be served consecutively.

[¶ 9] Six days later and prior to the entry of the written sentencing order, the state filed a motion to correct an illegal sentence which recognized that Mr. Lee had been erroneously sentenced on Count III because the crime occurred before the July 1, 1997, effective date of the amendment to § 6–2–306(a)(iii) that increased the maximum term for third-degree sexual assault from five years to fifteen years. 1997 Wyo. Sess. Laws ch. 135, §§ 1, 4. The district court agreed and ordered Mr. Lee's sentence on Count III be corrected to comply with the statute in effect at the time of the crime. At the hearing on this motion, the state made an oral motion to supplement the factual basis of the fifteen-year sentence on Count V to ensure the record accurately reflected that the crime occurred after July 1, 1997. Over Mr. Lee's strenuous objection, the district court allowed the state to present testimony from the lead investigator as to what he had learned from LB concerning the timing of

the assaults. The investigator's testimony was very brief and simply repeated information provided in the affidavit of probable cause and the PSI report which indicated the sexual assault of LB occurred after July 1, 1997. No new evidence was provided by the state. Mr. Lee then testified that his memory of the timing of the events had improved and he was now sure all the contacts with LB had occurred before July 1, 1997. That testimony was contrary to the information he supplied the court in his handwritten letter prior to the sentencing hearing. The district court entered an order correcting the sentence on Count III. Mr. Lee appealed claiming the sentence on Count V was illegal and the court improperly considered his refusal to undergo a psychological assessment in sentencing.[2]

## DISCUSSION

■■■ [¶ 10] The standard of review concerning the adequacy of evidence to support a sentence is abuse of discretion.

Sentencing decisions are normally within the discretion of the trial court. *Hamill v. State*, 948 P.2d 1356, 1358 (Wyo.1997). "A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Smith v. State*, 941 P.2d 749, 750 (Wyo. 1997). "An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. The party who is appealing bears the burden to establish that an error was prejudicial." *Candelaria v. State*, 895 P.2d 434, 439–40

(Wyo.1995) (citations omitted); *see also Robinson v. Hamblin*, 914 P.2d 152, 155 (Wyo.1996).

*Trusky v. State*, 7 P.3d 5, 13 (Wyo.2000). The trial court has responsibility to consider all relevant facts and circumstances in determining the appropriate sentence.

### A. Sufficiency of the Record to Support Twelve- to Fifteen Year Sentence on Count V

■■■ [¶ 11] The statute imposing penalties for sexual assault was amended in 1997 increasing the maximum penalty from five to fifteen years. Section 6–2–306(a)(iii); 1997 Wyo. Sess. Laws ch. 135, §§ 1, 4. Offenses occurring before July 1, 1997, could result in a maximum penalty of only five years, whereas offenses occurring after that date could result in a maximum penalty of fifteen years.[3] To obtain a conviction for sexual assault in the third degree of LB, the state needed only to prove the elements of the crime set out in § 6–2–304(a)(i); e.g., the defendant committed sexual assault (as defined by § 6–2–301(a)(v)) by inflicting sexual intrusion on LB who was under the age of sixteen years and the defendant was more than four years older. The specific date of the assault is not relevant to whether or not the act constituted a crime. The state did have the burden of alleging a general time frame within which the crime was committed in order to provide the defendant adequate notice and due process. *Stewart v. State*, 724 P.2d 439, 441 (Wyo.1986); *see also Vernier v. State*, 909 P.2d 1344, 1351 (Wyo.1996). The state met that burden by alleging the crime was committed between October 4, 1996, and December 31, 1998. Mr. Lee pleaded guilty to the charge of third-degree sexual assault

---

2. During this appeal, the state discovered an error in the sentencing transcript when the court orally imposed sentence. That transcript stated the sentence was twelve to thirteen years. However, the written sentence signed by both parties stated twelve to fifteen years. Other indications in the file showed that all parties understood the sentence to be twelve to fifteen years, and an affidavit to that effect was signed by the prosecutor, the defense counsel, and the Wyoming Department of Corrections. An order was entered correcting the sentencing record. Mr. Lee raised the matter as his Issue III on appeal. At oral argument before this court, Mr. Lee's counsel

conceded this issue, and we therefore consider the matter resolved.

3. The legislation amending § 6–2–306(a)(iii) stated, "This act does not apply to crimes committed prior to the effective date of this act. Prosecutions for a crime shall be governed by the law in effect on the date when the crime occurred. A crime was committed prior to the effective date of this act if any of the elements of the crime occurred prior to the effective date of this act." 1997 Wyo. Sess. Laws ch. 135, § 3.

on LB, admitting the crime occurred at anytime between the dates of October 4, 1996, through December 31, 1998, a time frame which extended over a year and a half beyond the July 1, 1997, effective date of the new sentencing statute. Given this record, we have no difficulty concluding Mr. Lee established an adequate factual basis for his guilty plea prior to any of the sentencing proceedings. Furthermore, we note at no time has Mr. Lee recanted, withdrawn, or asserted his guilty plea was involuntary.[4]

[¶ 12] Mr. Lee does, however, contend that the district court illegally sentenced him for an offense occurring after the change in the statute, July 1, 1997. Because he specifically acknowledged his guilt and that the crime occurred at any time between October 4, 1996, and December 31, 1998, this argument must be rejected.

[¶ 13] To support his argument, Mr. Lee relies upon certain efforts made by the prosecution to correct the illegal sentence for Count III involving the sexual assault on SB. Clearly, the information identified that count as having been committed long before the date the statute was amended to allow a maximum fifteen-year sentence, and all parties had failed to recognize that fact before the sentence was imposed. The state's action resulted in Mr. Lee's sentence for Count III being reduced to a maximum of five years.

[¶ 14] At the same time, in an abundance of caution, the state also sought to supplement the record on Count V to clarify that assaults covered by that charge occurred after July 1, 1997. The prosecution's action and comments on Count V were superfluous because all the evidence offered already existed in the sentencing record and unnecessarily created confusion on whether an adequate factual basis had been provided to support the guilty plea. If the factual

basis was inadequate for the court to conclude the guilty plea was voluntarily made in conformance with W.R.Cr.P. 11, the plea is ineffective, and all parties should go back to square one.[5] The rule requires the district court to satisfy itself that a factual basis exists for the guilty plea before accepting such plea. *Rude v. State,* 851 P.2d 15, 17 (Wyo.1993). As noted above, the court carefully followed the procedure, and Mr. Lee admitted the crime charged in Count V occurred at any time between October 1, 1996, and December 21, 1998, clearly encompassing the time frame after July 1, 1997. We reiterate that Mr. Lee presented no motion for change of plea nor contended in any manner that he sought to withdraw his guilty plea.

[¶ 15] *All* the "supplemental" evidence the prosecution offered was already in the record in the sentencing phase of the trial. The prosecution's sole "supplemental" evidence consisted of a police officer's testimony regarding the same information that was included in the affidavit of probable cause. Therefore, while this effort to supplement the record after the sentence was imposed may not have been appropriate, no harm was done.

[¶ 16] With respect to the issues Mr. Lee raised at the hearing concerning his revised version of the timing of the assault in Count V, any question regarding the specific date when that assault occurred is easily resolved by a review of the record in the sentencing phase of this trial. There, the district court had statements by the victim, another witness, and Mr. Lee himself that assaults on LB continued through 1998, long after the effective date of the amended sentencing statute. The affidavit of probable cause, which was contained in the PSI report, reflected LB's statement to the investigating officer, "From the fall of 1996/beginning of 1997 through the fall of 1998 [, LB] spent the

4. Absent a demonstration of specific prejudice such as a change in the plea decision, advice to a defendant of a greater sentence than can be imposed cannot be prejudicial. *Bird v. State,* 901 P.2d 1123, 1131 (Wyo.1995).

5. At the hearing on the motion to correct sentence, the district court suggested both the state and the defense consider whether they wanted to

revisit the plea agreement. In so doing, the district court specifically noted such a procedure would expose Mr. Lee to substantially more liability than he faced under the existing plea agreement. Neither party indicated in any manner either at the hearing or by subsequent pleadings that it chose such a course.

evening and overnight hours with Lee at Lee's residence on approximately twelve occasions.... [D]uring this time frame, [LB] was first sexually contacted by Lee at Lee's residence during the evening hours." LB's statement showed his contacts with Mr. Lee did not end until sometime in 1998 when his "parents began to regulate the time [he] was spending with Lee." LB's statement indicates he continued to have contact with Mr. Lee even after LB's parents stepped in. The same affidavit reflects BB's statement to the officer that pinpoints dates of the sexual assaults on LB in the fall of 1997. Although there were differences between Mr. Lee's and BB's statements regarding the time frame of the assaults on LB, both statements were consistent in reporting assaults occurred after July 1, 1997.

[¶ 17] In addition, Mr. Lee's own written statement established the assault on LB could not have occurred any earlier than two years before his arrest. Specifically, Mr. Lee asserted in his letter submitted May 20, 2000, "in the affidavit [LB] says things began in the end of 96 beginning of 97 which would put him in 6th or 7th grade. He told Heineke it began in 4th, at least a 2 year difference! *I don't believe it began more than 2 years ago.*" (Emphasis added.) On his own initiative and admission, Mr. Lee set the time of his assaults on LB squarely in 1998. "[F]iled presentence reports and information are evidence for the exercise of sentencing discretion, subject only to rights of the convicted individual to deny, dispute or disprove." *Johnson v. State,* 790 P.2d 231, 232 (Wyo.1990); *see also Swingholm v. State,* 910 P.2d 1334, 1338 (Wyo.1996); *Mehring v. State,* 860 P.2d 1101, 1115 (Wyo.1993).

[¶ 18] The district court had the authority to rely on this evidence, in addition to the factual basis for the guilty plea, to determine the appropriate sentence.[6] In a

similar case involving an amended statute applicable to crimes committed after a certain date, the Minnesota Supreme Court found: "The trial judge, in its role of sentencing judge, was free to resolve this issue for sentencing purposes." *State v. Murray,* 495 N.W.2d 412, 413 (Minn.1993). We conclude the sentence was proper given the guilty plea on the factual basis which included a time frame long after the July 1, 1997, effective date of the amended sentencing statute.

[¶ 19] Mr. Lee also complains that the sentencing process somehow raised a double jeopardy issue. However, this claim is supported merely by reference to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the United States Supreme Court found a New Jersey state statute unconstitutional because it removed determination of one of the elements of a felony offense—whether the offense was committed with a biased purpose from the jury for determination by the judge on the lesser standard of preponderance of the evidence. We fail to see how this authority has any bearing on the circumstances of this case. *Brown v. State,* 736 P.2d 1110, 1114 (Wyo.1987).

[¶ 20] The double jeopardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Bilderback v. State,* 13 P.3d 249, 253 (Wyo.2000); *Glasrud v. City of Laramie,* 934 P.2d 1242, 1244 (Wyo.1997). When we analyze the protection against double jeopardy in terms of multiple prosecutions and cumulative punishments, we apply the statutory elements test defined in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[7] *Owen v. State,* 902 P.2d

---

6. This court has approved the actions of a trial court in ordering an arresting officer to appear at a probation revocation proceeding, an extension of the sentencing procedure, to ensure its understanding and awareness of any possible mitigating factors. *Minchew v. State,* 685 P.2d 30, 33 (Wyo.1984). We have also commended a trial court because it ensured a defendant's back-

ground was investigated "from A to Z." *Hicklin v. State,* 535 P.2d 743, 749 (Wyo.1975).

7. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Block-*

190, 192 (Wyo.1995). However, the instant case presents neither multiple prosecutions nor multiple punishments for the same offense. Moreover, Mr. Lee has failed to cite persuasive authority or make cogent argument in support of his double jeopardy contentions. *Brown,* 736 P.2d at 1114; *see also Jennings v. State,* 4 P.3d 915, 922 (Wyo. 2000). Therefore, the issue merits no further consideration.

## B. Consideration in Sentencing of Mr. Lee's Refusal to Undergo Psychological Assessment

[¶ 21] Mr. Lee refused to undergo a psychological assessment as requested by the state. The district court held a hearing on his objections and concluded it could not force Mr. Lee to comply but could consider his refusal against him in the course of sentencing. The district court stated, "if Mr. Lee fails to cooperate in that phase of the pre-sentence inquiry I am free to draw adverse inferences from his failure of cooperation and may well conclude that he presents a continuing danger to the community."

[17] [¶ 22] At the hearing on the state's motion for an assessment, Mr. Lee argued that *Mitchell v. United States,* 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), prevented the district court from ordering an assessment and, therefore, implicitly that precedent also prevented the court from drawing a negative inference from his refusal to undergo such an assessment. The district court distinguished *Mitchell* from this situation because that case involved an attempt to force a defendant, who had pleaded guilty, to testify regarding certain facts of the crime with which she was charged. The defendant in *Mitchell* faced a sentence anywhere from one year to life depending on the quantity of drugs involved, and the Supreme Court found holding the defendant's silence against her at sentencing impermissibly burdened her exercise of the constitutional right against compelled self-incrimination.

[¶ 23] Here, the district court is mandated to gather and consider certain information prior to sentencing. W.R.Cr.P.

32(a) requires a PSI be done in every felony case and a report be submitted to the district court. That report must contain, among other facts, "[i]nformation about the history and characteristics of the defendant, including . . . any circumstances affecting the defendant's behavior that may be helpful in imposing sentence," W.R.Cr.P. 32(a)(2)(A), as well as "[s]uch other information as may be required by the court." W.R.Cr.P. 32(a)(2)(D). This court has approved the use of psychological assessments, such as the one requested in this case, in the sentencing of sex offenders. *Hornecker v. State,* 977 P.2d 1289, 1292 (Wyo.1999). The district court in this case sought the assessment to "aid the court in determining whether or not [Mr. Lee] presents a danger to others." We have approved of such considerations in the course of sentencing. *Munden v. State,* 698 P.2d 621, 626–27 (Wyo.1985). A defendant's failure to cooperate in the PSI is certainly a valid factor for a trial court to consider in contemplating the appropriate sentence. As we have said, sentencing requires consideration of the circumstances surrounding the crime and the character of the criminal. *Sampsell v. State,* 2001 WY 12, ¶ 6, 17 P.3d 724, ¶ 6 (Wyo.2001). This record reflected substantial evidence that supported the district court's imposition of the maximum sentence allowed by statute, including the testimony of three victims who were groomed for exploitation by Mr. Lee, the unrefuted testimony of a state psychologist who reviewed all the information and concluded Mr. Lee presented a continuing risk to the community, and Mr. Lee's own statement of his guilt. Had Mr. Lee consented to the assessment, it might have provided information that he was amenable to treatment and supported a lesser sentence. It was his right to refuse the assessment and the district court's right to consider such refusal in determining the appropriate sentence.

## C. Presentence Confinement Credit

[¶ 24] The initial sentencing order provided separate credits on the sentences for Count III and Count V for 102 days presentence confinement. As noted in

*burger,* 284 U.S. at 304, 52 S.Ct. 180; *see also*   *Bilderback,* 13 P.3d at 253.

the facts set out above, a corrected sentencing order reduced the sentence on Count III to not less than four years and six months nor more than five years, consistent with the sentencing statute applicable when the crimes occurred. However, the corrected sentencing order also removed the presentence credit to the otherwise unmodified Count V sentence. No reason for this change can be found in the record. It was not requested by the state, nor is an explanation by the district court found in the transcripts of the various proceedings. We can only speculate whether this alteration is the result of a typographical error or was intended as a deliberate adjustment to the original sentencing order. Regardless of the reason, the practical effect of the change is the same because Mr. Lee is required to serve 102 more days for his sentence on Count V under the corrected sentencing order than he would have served pursuant to the original sentencing order. A sentence cannot be increased after it has been entered. *Kaess v. State,* 748 P.2d 698, 702 (Wyo.1987); *Turner v. State,* 624 P.2d 774 (Wyo.1981); *Sullens v. United States,* 409 F.2d 545 (5th Cir.1969). Although Mr. Lee's sentence was not increased *per se,* the tangible outcome is that he will serve more time. For these reasons, we reverse that portion of the corrected sentencing order and remand the matter to the district court for entry of an amended sentencing order providing 102 days presentence incarceration credit on Count V. We specifically qualify this determination as limited to this case with this record and facts with no broader implication than the appropriate treatment of Mr. Lee's presentence incarceration credit based on the two sentencing orders issued during the course of his criminal prosecution.

[¶ 25] Affirmed in part, reversed in part, and remanded.