*599 BRISCOE, Circuit Judge.
Petitioner Lynn Lee, a Wyoming state prisoner convicted of two counts of sexual assault in the third degree and sentenced to consecutive terms of imprisonment, sought federal habeas relief pursuant to 28 U.S.C. § 2254 from his sentences. The district court denied relief, but granted Lee a certificate of appealability (COA) with respect to Lee’s claim that the state trial court violated his privilege against self-incrimination at the time of sentencing. Lee now challenges the merits of that ruling on appeal. Lee also seeks an expanded certificate of appealability (COA) in order to challenge the district court’s ruling on double jeopardy and due process claims that he raised in his petition. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, affirm the district court’s denial of federal habeas relief on the self-incrimination claim, and deny Lee’s request for an expanded COA.
I.
On February 11, 2000, Lee was arrested and charged by information in Wyoming state court with five criminal counts arising out of his sexual activities with several minor males over a period of years. In pertinent part, Counts 3 and 5 of the information charged Lee with sexual assault in the third degree in violation of Wyoming Statutes Annotated §§ 6-2-304(a)(I), 6-2-306, and 6-10-102. App. at 7. Count 3 alleged “that between March 21, 1994 and September 21, 1995,” Lee “inflicted sexual intrusion on a victim, when at the time [the victim] was less than 16 years of age and [Lee] w[as] at least four years older than [the victim].” App. at 41. Count 5 “alleged that between October 4, 1996 and December 31, 1998,” Lee “did unlawfully inflict sexual intrusion on a victim when the victim was less than 16 and [Lee] w[as] at least four years older....” Id. at 41-42.
Lee subsequently entered into a plea agreement with the prosecution, pursuant to which he agreed to plead guilty to Counts 3 and 5 in exchange for the prosecution’s agreement to dismiss the remaining counts. In the course of accepting Lee’s guilty plea, the trial court asked Lee about the details of the two crimes to which he was pleading guilty. With respect to Count 3, Lee admitted that the crime occurred “[approximately between June and September of '95 at [his] house ... in Gillette,” Wyoming. Id. at 66. With respect to Count 5, Lee admitted that “between October 4, 1996 and December 31, 1998,” he “performed oral sex with” a minor victim. Id. at 52. When asked by the trial court if he could indicate “more definitely ... when the[ ] events occurred,” he indicated he could not. Id. at 73. Lee did indicate, however, that he had sexual contact with the victim alleged in Count 5 on “[t]hree or four” occasions. Id. at 76.
Following the entry of Lee’s guilty plea, the prosecution moved to compel Lee to submit to a psychological evaluation. After conducting a hearing on the motion, the trial court held it could not compel Lee to submit to such an evaluation.
The trial court sentenced Lee on May 24, 2000. During the sentencing hearing, the prosecution presented testimony from William Heineke, a licensed professional counselor with expertise “in the area of inappropriate sexual activity between minors and adults.” Id. at 130. Heineke opined, based upon his review of the case, that Lee was “in a high risk category” in terms of likelihood of recidivism. Id. at 134. Heineke further opined that Lee had a narcissistic personality disorder, id. at 144, and presented a “[h]igh risk” to “post prepubescent minors.” Id. at 146. At the conclusion of the evidence, Lee’s counsel argued that “Lee [wa]s amenable to treat *600 ment” or “rehabilitation.... ” Id. at 159. The trial court stated, in response: “How would I know that? He’s not submitted to any kind of evaluation. I can’t take that on faith.” Id. Lee’s counsel then argued: “Correct, but I think you also should not take the fact that he did not submit to an evaluation to the fact that’s he’s not amenable to treatment or willing to do that. * * * [T]he fact that he chose not to submit himself to an evaluation does not mean that he’s not amenable to treatment or that he would not cooperate with that.” Id. at 159-60. Later, when the trial court announced its sentence, it stated:
Early on there was a request that you [Lee] submit to an evaluation by the State. The State requested that you do that. I reviewed the precedents] from the United States Supreme Court and concluded I couldn’t require you to do that, but that I could draw adverse inferences from your failure to participate in that.
You might be amenable to treatment, but I don’t know and I’m not going to take it on faith. Accordingly, I see my duty as one of to keep you isolated from potential victims for as long of period as I can do that.
It’s the sentence of the Court that you’ll be incarcerated on each count for a period of not less than 12 nor more than [15] years. The sentences will run consecutively.
Id. at 161-62. After announcing the sentences, the trial court then stated to Lee:
Now, when you pled guilty I explained to you that you gave up your right to appeal from a legal sentence. I have, however, drawn inferences from your failure to cooperate in the evaluation process. That’s an issue which you may want to appeal to the Supreme Court. You can discuss it with your attorney. It’s one that would be a permissible appeal even though you pled guilty. You should discuss that with [your attorney.]
Id. at 164.
On May 30, 2000, six days after the sentencing hearing, the prosecution filed a motion to correct illegal sentence as to Count 3. The motion was based on the prosecution’s realization that the offense charged in Count 3 occurred in 1995 when the maximum penalty specified under Wyoming law for sexual assault in the third degree was five years’ imprisonment. In other words, the prosecution’s motion asserted that Lee had been illegally sentenced under a 1997 sentencing provision that was harsher than the one in place at the time the crime was committed.
The trial court held two hearings on the prosecution’s motion. During the second such hearing, the trial court permitted the prosecution to “supplement the record on the factual basis with respect to Count 5” in order to establish that the acts underlying Count 5 occurred after July 1, 1997, when the Wyoming legislature increased the maximum penalty for sexual assault in the third degree from five to fifteen years.[1] Id. at 305. At the conclusion of the second hearing, the trial court resenteneed Lee to *601 a terna of imprisonment of fifty-four to sixty months on Count 3, the maximum sentence available under Wyoming law at the time Lee committed the acts underlying Count 3. The trial court again ordered that the sentences on Counts 3 and 5 would run consecutively.
Lee appealed to the Wyoming Supreme Court of Wyoming, arguing, in pertinent part, that “[t]he trial court abused its discretion” at the time of sentencing when it “formed adverse inferences against [him] for invoking his Fifth Amendment right against self-incrimination.” Id. at 171. In support of that argument, Lee asserted that if he had “participated in the [psychological] evaluation, he likely would have been called upon to provide information that could [have] be[en] used against him at sentencing.” Id. at 182. Thus, Lee argued, he “had a Fifth Amendment right to refuse to submit himself to such a potentially incriminating psychological evaluation.” Id. In turn, Lee asserted, the trial court “overstepped [its] discretionary bounds when [it] effectively took this right away from” him by drawing an adverse inference from his refusal to submit to an evaluation. Id. In a separate argument, Lee also asserted that the trial court erred in allowing the prosecution to supplement the record in order to justify the sentence imposed with respect to Count 5. More specifically, Lee argued that this procedure “raised a double jeopardy issue.” Id. at 267.
The Wyoming Supreme Court affirmed Lee’s sentences on December 17, 2001.[2] Lee v. State, 36 P.3d 1133 (Wyo.2001). In doing so, the Wyoming Supreme Court concluded the trial court acted properly in considering, for purposes of sentencing, Lee’s refusal to submit to a psychological evaluation. Id. at 268-69. The Wyoming Supreme Court also concluded there was no double jeopardy violation arising out of the trial court’s decision to allow the prosecution to provide supplemental evidence regarding Count 5 for purposes of sentencing, noting that “the ... case presented] neither multiple prosecutions nor multiple punishments for the same offense.” Id. at 268.
Lee then filed his federal habeas petition claiming (1) the state trial court violated his privilege against self-incrimination by drawing an adverse inference from his refusal to participate in a court-ordered psychological evaluation, (2) the prosecution violated the constitutional prohibition against double jeopardy by supplementing the record after his original sentencing hearing, and (3) his due process rights were violated because the date of the offense underlying Count 5 was not established beyond a reasonable doubt. The district court denied relief and dismissed the petition, but granted Lee a COA with respect to the self-incrimination issue.
II.
A SELF-INCRIMINATION
Lee contends the trial court effectively penalized him for exercising his Fifth Amendment privilege against self-incrimination and refusing to submit to a psychological evaluation by drawing an adverse inference from that refusal at the time of sentencing. Lee first raised this issue during the hearing on the prosecution’s motion for a psychological evaluation, arguing that the Supreme Court’s decision in Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), “prevented the [trial] court from ordering *602 an assessment and, therefore, implicitly that precedent also prevented the court from drawing a negative inference from his refusal to undergo such an assessment.” Lee, 36 P.3d at 1141. The trial court “distinguished Mitchell from [Lee’s] situation because that case involved an attempt to force a defendant, who had pleaded guilty, to testify regarding certain facts of the crime with which she was charged.” Id. Having so ruled, the trial court then expressly indicated it was drawing an adverse inference from Lee’s refusal to submit to a psychological evaluation. Although it is not entirely clear from the transcript of the sentencing hearing, it appears the trial court inferred from Lee’s refusal that he was not “amenable to treatment,” and in turn concluded it needed “to keep [Lee] isolated from potential victims for as long of period” as possible. App. at 162. In other words, it appears that Lee’s silence resulted in the trial court declining to reduce Lee’s sentences on the grounds of amenability to treatment.
Lee reasserted the Fifth Amendment issue on direct appeal. The Wyoming Supreme Court, after briefly discussing the facts and holding of Mitchell, rejected Lee’s claim:
[T]he [trial] court is mandated to gather and consider certain information prior to sentencing. W.R.Cr.P. 32(a) requires a PSI be done in every felony case and a report be submitted to the district court. That report must contain, among other facts, “[flnformation about the history and characteristics of the defendant, including ... any circumstances affecting the defendant’s behavior that may be helpful in imposing sentence,” W.R.Cr.P. 32(a)(2)(A), as well as “[s]uch other information as may be required by the court.” W.R.Cr.P. 32(a)(2)(D). This court has approved the use of psychological assessments, such as the one requested in this case, in the sentencing of sex offenders, (citation omitted). The district court in this case sought the assessment to “aid the court in determining whether or not [Mr. Lee] presents a danger to others.” We have approved of such considerations in the course of sentencing, (citation omitted). A defendant’s failure to cooperate in the PSI is certainly a valid factor for a trial court to consider in contemplating the appropriate sentence. As we have said, sentencing requires consideration of the circumstances surrounding the crime and the character of the criminal, (citation omitted). This record reflected substantial evidence that supported the [trial] court’s imposition of the maximum sentence allowed by statute, including the testimony of three victims who were groomed for exploitation by Mr. Lee, the unrefuted testimony of a state psychologist who reviewed all the information and concluded Mr. Lee presented a continuing risk to the community, and Mr. Lee’s own statement of his guilt. Had Mr. Lee consented to the assessment, it might have provided information that he was amenable to treatment and supported a lesser sentence. It was his right to refuse the assessment and the district court’s right to consider such refusal in determining the appropriate sentence.

Id.

Because Lee does not contend the Wyoming Supreme Court’s decision involved an “unreasonable determination of the facts,” see 28 U.S.C. § 2254(d)(2), the only way he can obtain federal habeas relief is to establish that the Wyoming Supreme Court’s adjudication of his self-incrimination claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). *603 To establish that the Wyoming Supreme Court’s adjudication was “contrary to” clearly established federal law, Lee must demonstrate that the Wyoming Supreme Court “arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law,” or “decide[d][the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts.” Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To establish that the Wyoming Supreme Court’s adjudication involved an “unreasonable application of’ clearly established federal law, Lee must demonstrate that the Wyoming Supreme Court “identifie[d] the correct governing legal principle from [the Supreme] Court’s decisions but unreasonably applie[d] this principle to the facts” of his case. Id.
Lee asserts that the Supreme Court’s decisions in Mitchell, Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), “provide the clear rules which govern this case.” Aplt. Br. at 16. In Griffin, the Court held “that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused’s silence or instructions by the court that such silence is evidence of guilt.” 380 U.S. at 615, 85 S.Ct. 1229. Estelle and Mitchell extended that ruling to certain criminal sentencing contexts. Estelle involved a federal habeas petition filed by a state capital defendant who had been subjected to a pre-trial psychiatric examination in order to determine his competence to stand trial. The psychiatrist subsequently testified at the sentencing phase of the defendant’s trial and opined “on the crucial issue of [the defendant’s] future dangerousness.... ” 451 U.S. at 467, 101 S.Ct. 1866. The Supreme Court concluded that the psychiatrist’s testimony violated the defendant’s Fifth Amendment privilege against compelled self-incrimination. In doing so, the Supreme Court, in addition to holding the Fifth Amendment privilege applicable to the sentencing phase of a capital trial and to statements uttered in the context of a psychiatric examination, emphasized that a defendant’s Fifth Amendment right against self-incrimination “is fulfilled only when a criminal defendant is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence.” Id. at 468, 101 S.Ct. 1866 (internal quotations omitted).
Mitchell involved a federal criminal defendant who pled guilty to conspiring to distribute cocaine and three counts of distributing cocaine within one thousand feet of a school or playground. At the sentencing hearing, the government presented a variety of evidence concerning the amount of cocaine that the defendant had distributed, including testimony from three of the defendant’s co-conspirators. The district court, after hearing the government’s evidence, “ruled that, as a consequence of her guilty plea, [the defendant] had no right to remain silent with respect to the details of her crimes.” 526 U.S. at 319, 119 S.Ct. 1307. Notwithstanding this ruling, the defendant refused to testify. Accordingly, the district court relied on the testimony of the defendant’s co-conspirators and expressly stated on the record that it “held it against [the defendant] that [she] didn’t come forward” and testify. Id. After her sentence was affirmed by the Third Circuit, the defendant sought and was granted review by the Supreme Court. The Court, in a 5-4 decision, reversed and remanded the case. In doing so, the Court held that (1) a guilty plea does not result in a waiver of the Fifth Amendment privi *604 lege against self-incrimination in the sentencing phase of the case, and (2) “in determining facts about the crime which bear upon the severity of the sentence,” it is impermissible for a trial court to “drawn an adverse inference from the defendant’s silence.” Id. at 316-17, 119 S.Ct. 1307. With respect to this latter holding, the Court noted that “[t]he normal rule in a criminal case is that no negative inference from the defendant’s failure to testify is permitted,” and it “decline[d] to adopt an exception for the sentencing phase of a criminal case with regard to factual determinations respecting the circumstances and details of the crime.” Id. at 327-28, 119 S.Ct. 1307. The Court noted that “[t]he Government often has a motive to demand a severe sentence, so the central purpose of the privilege- — -to protect a defendant from being the unwilling instrument of his or her own condemnation— remains of vital importance.” Id. at 329, 119 S.Ct. 1307. In closing, the Court stated:
The Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege. Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question. It is not before us, and we express no view on it.
Id. at 330, 119 S.Ct. 1307.
The four dissenting justices in Mitchell criticized the majority’s holding and its refusal to address whether its holding applied to situations other than where a sentencing court was “determining the facts of the offense”:
Which brings [us] to the greatest — the most bizarre — inconsistency of all: the combination of the rule that the Court adopts today with the balance of our jurisprudence relating to sentencing in particular. “[C]ourts in this country and in England,” we have said, have “practiced a policy under which a sentencing judge [can] exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.” (citation omitted). “[A] sentencing judge ‘may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.’ ” (citation omitted). “Few facts available to a sentencing judge,” we have observed, “are more relevant to the ‘likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society’ ” than a defendant’s willingness to cooperate. (citation omitted). Today’s opinion states, in as inconspicuous manner as possible at the very end of its analysis (one imagines that if the statement were delivered orally it would be spoken in a very low voice, and with the Court’s hand over, its mouth), that its holding applies only to inferences drawn from silence “in determining the facts of the offense.” (citation omitted). “Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question” on which the majority expresses no view, (citation omitted). Never mind that we have said before, albeit in dicta, that “[w]e doubt *605 that a principled distinction may be drawn between ‘enhancing’ the punishment imposed upon the petitioner and denying him the ‘leniency’ he claims would be appropriate if he had cooperated.” (citation omitted).
Of course the clutter swept under the rug by limiting the opinion to “determining facts of the offense” is not merely application of today’s opinion to § 3E1.1, but its application to all determinations of acceptance of responsibility, repentance, character, and future dangerousness, in both federal and state prosecutions — that is to say, to what is probably the bulk of what most sentencing is all about. If the Court ultimately decides — in the fullness of time and after a decent period of confusion in the lower courts — that the “no inference” rule is indeed limited to “determining facts of the offense,” then we will have a system in which a state court can increase the sentence of a convicted drug possessor who refuses to say how many ounces he possessed — not because that suggests he possessed the larger amount (to make such an inference would be unconstitutional!) but because his refusal to cooperate suggests he is unrepentant. Apart from the fact that there is no logical basis for drawing such a line within the sentencing phase (whereas drawing a line between guilt and sentencing is entirely logical), the result produced provides new support for Mr. Bumble’s renowned evaluation of the law. Its only sensible feature is that it will almost always be unenforceable, since it will ordinarily be impossible to tell whether the sentencer has used the silence for either purpose or for neither.
If, on the other hand, the Court ultimately decides — in the fullness of time and after a decent period of confusion in the lower courts — that the extension of Griffin announced today is not limited to “determining facts of the offense,” then it will have created a system in which we give the sentencing judge access to all sorts of out-of-court evidence, including the most remote hearsay, concerning the character of the defendant, his prior misdeeds, his acceptance of responsibility and determination to mend his ways, but declare taboo the most obvious piece of firsthand evidence standing in front of the judge: the defendant’s refusal to cooperate with the court. Such a rule orders the judge to avert his eyes from the elephant in the courtroom when it is the judge’s job to size up the elephant.
The patent inadequacy of both of these courses with regard to determining matters other than the “facts of the offense” is not finessed by simply resolving, for the time being, not to choose between them. Sooner or later the choice must be made, and the fact that both alternatives are unsatisfactory cries out that the Court’s extension of Griffin is a mistake.
Id. at 338-41, 119 S.Ct. 1307.
Considering these three decisions together, we conclude it remains unanswered by the Supreme Court whether a sentencing court in a non-capital case may, for purposes other than determining the facts of the offense of conviction, draw an adverse inference from a criminal defendant’s refusal to testify or cooperate.[3] Al *606 though Lee contends the decision in Estelle clearly indicates, or at least implies, that it is improper for a sentencing court to draw an adverse inference under such circumstances, Estelle is distinguishable because it was a capital case and the Supreme Court expressly emphasized “the gravity of the decision to be made at the penalty phase” in such a case. 451 U.S. at 463, 101 S.Ct. 1866. Indeed, had Estelle resolved the issue, the Court in Mitchell clearly would have said as much (and the decision in Mitchell may have been altogether unnecessary). Instead, the majority in Mitchell limited the application of Estelle to the facts before it, i.e., “where the Government s[ought] to use [the defendant’s] silence to infer commission of disputed criminal acts” for purposes of sentencing, 526 U.S. at 329, 119 S.Ct. x1307, and expressly declined to consider whether Estelle applied where, as in Lee’s case, the sentencing court sought to use Lee’s silence for purposes other than determining the facts of the offense of conviction.
Thus, contrary to Lee’s assertions, there was no “clearly established” federal law prohibiting what the trial court did in his case, i.e., drawing an adverse inference from Lee’s refusal to submit to a psychological evaluation for purposes of determining whether Lee represented a continuing danger to society and/or whether he was amenable to rehabilitation. In turn, then, the Wyoming Supreme Court’s decision affirming the trial court’s actions was not “contrary to” or an “unreasonable application of’ clearly established federal law.
II. REQUEST FOR COA — DOUBLE JEOPARDY/DUE PROCESS
Lee also asks us to expand the COA initially granted by the district court in order to allow him to appeal the district court’s denial of the double jeopardy and due process arguments he asserted in his federal habeas petition. In order for us to grant a COA, Lee must make “a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). To do so, Lee must demonstrate “that reasonable jurists could debate whether (or, for that matter, agree that) the [issue] should have been resolved in a different manner or that the issue[ ] ... w[as] adequate to deserve encouragement to proceed further.” Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (internal quotation marks and citation omitted).
Lee’s double jeopardy and due process arguments concern the sentence he received for Count 5. As previously noted, Count 5 charged Lee with sexual assault and alleged that between October 4, 1996 and December 31, 1998, Lee committed oral sex on a minor victim. At the time he pled guilty to Count 5, Lee admitted these allegations, including the date range, but was unable to indicate more definitely when the events occurred. Lee did indicate, however, that he had sexual contact with the victim alleged in Count 5 on three or four occasions. At the sentencing hearing on May 24, 2000, the district court sentenced Lee to not less than twelve nor more than fifteen years on Count 5. Notably, that sentence was within the fifteen-year maximum sentence authorized under Wyoming law for third-degree sexual assaults occurring after July 1, 1997, see Wyo. Stat. Ann. § 6 — 2—306(a)(iii), but far greater than the five-year maximum sentence authorized under Wyoming law for such crimes prior to July 1,1997. On July 21, 2000, a hearing was held during which the prosecution was allowed to “supplement the record on the factual basis with respect to Count 5” in order to establish *607 that the underlying facts of the crime occurred after July 1997. Although the trial court ultimately resentenced Lee on Count 3 because the acts underlying that count occurred prior to July 1, 1997, the trial court did not alter Lee’s sentence on Count 5.
In his direct appeal, Lee argued that he was illegally sentenced on Count 5. Lee also argued that the sentencing process on Count 5, in particular the trial court’s decision to allow the prosecution to present supplemental evidence regarding the dates when the acts underlying Count 5 occurred, violated his right not to be subjected to double jeopardy. The Wyoming Supreme Court rejected both of these arguments. The Wyoming Supreme Court first concluded that “[bjecause [Lee] specifically acknowledged his guilt and that the crime occurred at any time between October 4, 1996, and December 31, 1998,” his sentence on Count 5 was not illegal. App. at 265. The Wyoming Supreme Court also concluded that the supplemental evidence presented by the prosecution regarding Count 5 was “superfluous because all the evidence offered already existed in the sentencing record....” Id. at 266. More specifically, the Wyoming Supreme Court noted that “[t]he prosecution’s sole ‘supplemental’ evidence consisted of a police officer’s testimony regarding the same information that was included in the affidavit of probable cause.” Id. Thus, the Wyoming Supreme Court concluded that “while th[e] effort to supplement the record after the sentence was imposed may not have been appropriate, no harm was done.” Id. Finally, the Wyoming Supreme Court rejected Lee’s double jeopardy argument:
Mr. Lee also complains that the sentencing process somehow raised a double jeopardy issue. However, this claim is supported merely by reference to Apprendi v. New Jersey, 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] (2000). In Apprendi the United States Supreme Court found a New Jersey state statute unconstitutional because it removed determination of one of the elements of a felony offense — whether the offense was committed with a biased purpose — from the jury for determination by the judge on the lesser standard of preponderance of the evidence. We fail to see how this authority has any bearing on the circumstances of this case, (citation omitted).
The double jeopardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense, (citations omitted). When we analyze the protection against double jeopardy in terms of multiple prosecutions and cumulative punishments, we apply the statutory elements test defined in Blockburger v. United States, 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932). (citation omitted). However, the instant case presents neither multiple prosecutions nor multiple punishments for the same offense. Moreover, Mr. Lee has failed to cite persuasive authority or make cogent argument in support of his double jeopardy contentions, (citations omitted). Therefore, the issue merits no further consideration.
Id. at 267-68.
Lee reasserted these double jeopardy and due process arguments in his federal habeas petition (and included in his petition additional due process arguments that were not asserted in state court). Lee argued, in particular, that “where there has been no change related to the original conviction (either by a successful appeal of the conviction by the defendant or an appeal of the sentence by the State), the *608 State should only be entitled to one opportunity to demonstrate that the sentence imposed is proper for the offense of conviction.” App. at 27. “By adding to the record after the fact,” Lee argued, “the State was permitted to justify a sentence three times longer than the sentence which was permissible for the offense of conviction based on the facts admitted at the time of the plea.” Id. Lastly, citing Ap-prendi, Lee argued that “[t]he hearing at which the State supplemented the record” could “not be said to comport with the due process standards necessary to prove a ‘fact’ — the date of the offense — which tripled [his] maximum sentencing exposure.” Id.
The district court rejected Lee’s arguments:
Mr. Lee’s double jeopardy and due process arguments are misplaced. This Court agrees with the Wyoming Supreme Court that Apprendi is not applicable to this case and does not support either a double jeopardy or a due process claim. Mr. Lee was not subjected to multiple punishments for the same offense. Further, although a court may not increase a defendant’s sentence once the defendant has a legitimate expectation of finality in his original sentence, (citation omitted), Mr. Lee’s sentence was not increased by the trial court.
By pleading guilty, a defendant admits involvement in the crime up to and including the last date alleged in the charge, (citation omitted). Mr. Lee pleaded guilty to sexual assault on LB [the minor victim in Count 5] between October 4, 1996, and December 31, 1998. The supplemental evidence offered by the state does not change the fact that Mr. Lee admitted that he sexually assaulted LB after the July 1, 1997 effective date of the penalty increase. Additionally, the evidence in the record at sentencing provided a factual basis that Mr. Lee sexually assaulted LB after July 1, 1997. (citation to record omitted). Mr. Lee has not shown that [the] Wyoming Supreme Court improperly rejected his due process or double jeopardy argument.
Id. at 390-91.
After reviewing the record on appeal, we conclude there is no basis for granting a COA to Lee on his double jeopardy and due process arguments. To begin with, the Wyoming Supreme Court found, as a matter of historical fact, that (1) Lee admitted to engaging in wrongful conduct after July 1, 1997, and (2) the “supplemental” evidence presented by the prosecution was “superfluous” because the same evidence was before the trial court at the time of Lee’s sentencing. The first of these findings is amply supported by the record on appeal (in particular the transcript of Lee’s guilty plea hearing), and thus Lee cannot establish that the finding amounted to an “unreasonable determination ... in light of the evidence presented in the state court proceeding.” 28 U.S.C. § 2254(d)(2). As for the second finding, Lee has not argued that it was unreasonable under § 2254(d)(2), nor has he even presented an adequate record on appeal to allow us to determine whether the evidence available to the trial court at the time of sentencing was the same as the supplemental evidence later presented by the prosecution.[4] Moreover, as noted by the Wyoming Supreme Court, Lee simply has not been subjected to multiple punishments for the same offense. E.g., North Carolina v. Pearce, 395 U.S. 711, 717, 89 *609 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (discussing the Double Jeopardy Clause of the Fifth Amendment). Rather, he was subjected to a single, twelve-to-fifteen year sentence for his admitted crime of engaging in oral sex with a minor at some point between July 1, 1997, and December 31, 1998.[5]
The district court’s denial of federal ha-beas relief with respect to Lee’s Fifth Amendment self-incrimination claim is AFFIRMED. Lee’s request for an expanded COA is DENIED.

. The evidence consisted of testimony from William Eiger, a police officer with the City of Gillette, Wyoming, who testified that he spoke to the victims of Lee’s crimes and they indicated an incident of sexual assault had occurred in the fall of 1997 at Lee's home. App. at 308-09. As noted by the district court, Eiger’s "testimony was very brief....” App. at 374. The district court further concluded that Eiger’s testimony "simply repeated information provided in the affidavit of probable cause and the PSI [presentence investigation] report which indicated the sexual assault of [the victim in Count 5] occurred after July 1, 1997.” Id.

. The Wyoming Supreme Court did reverse and remand the case to the state district court for the limited purpose of reinstating the credit for time served which had been granted in the original sentence but omitted from the amended sentence.

. Since Mitchell, the circuit courts have readily confined Mitchell to its stated holding, and have allowed sentencing courts to rely on, or draw inferences from, a defendant’s exercise of his Fifth Amendment rights for purposes other than determining the facts of the offense of conviction. E.g., United States v. Warren, 338 F.3d 258, 263 (3d Cir.2003) (holding that the denial of a sentencing reduction under U.S.S.G. § 5C1.2 based on a defendant’s post-guilty-plea silence constituted a *606 “denied benefit” rather than a penalty and thus avoids Fifth Amendment implications).

. Although Lee has included in his appendix a copy of the hearing at which the prosecution presented the "supplemental'' evidence, he has not included all the materials available to the trial court at the time of sentencing

. Curiously, the dissent acknowledges that Lee pled guilty to committing an assault "on some date during the 27-month period stated in Count 5,” but nevertheless asserts that the plea cannot be construed as an admission that an assault occurred on or after July 1, 1997. This latter assertion, however, flies in the face of the express terms of the indictment and Lee's admissions at the time of the plea hearing, and effectively and improperly narrows the terms of Lee's plea. We instead conclude, as did the Wyoming Supreme Court and the district court, that Lee's plea constitutes an admission of involvement in the crime up to and including the last date alleged in Count 5 of the indictment (i.e., December 31, 1998). See United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (noting that a guilty plea "is an admission that [the defendant] committed the crime charged against him”) (internal quotation marks omitted).