**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LYNN LEE,

      Petitioner-Appellant,

v.

BRENT CROUSE, Warden, Crowley
County Correctional Facility; R. O.
LAMPERT, Director, Wyoming
Department of Corrections; PATRICK
CRANK, Wyoming Attorney General,

      Respondents-Appellees.

No. 04-8116

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 03-CV-111-WFD)**

Sean C. Chambers, Student Director (Diane E. Courselle, Director, with him on the
briefs), Defender Aid Program, University of Wyoming, College of Law, Laramie,
Wyoming, for Petitioner-Appellant.

David L. Delicath, Senior Assistant Attorney General (Patrick J. Crank, Wyoming
Attorney General, with him on the brief), Cheyenne, Wyoming, for Respondents-
Appellees.

Before **BRISCOE** and **HARTZ**, Circuit Judges, and **HERRERA,** District Judge[*]

---

    [*] The Honorable Judith C. Herrera, United States District Judge for the District of
New Mexico, sitting by designation.

**BRISCOE,** Circuit Judge

Petitioner Lynn Lee, a Wyoming state prisoner convicted of two counts of sexual assault in the third degree and sentenced to consecutive terms of imprisonment, sought federal habeas relief pursuant to 28 U.S.C. § 2254 from his sentences. The district court denied relief, but granted Lee a certificate of appealability (COA) with respect to Lee's claim that the state trial court violated his privilege against self-incrimination at the time of sentencing. Lee now challenges the merits of that ruling on appeal. Lee also seeks an expanded certificate of appealability (COA) in order to challenge the district court's ruling on double jeopardy and due process claims that he raised in his petition. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, affirm the district court's denial of federal habeas relief on the self-incrimination claim, and deny Lee's request for an expanded COA.

I.

On February 11, 2000, Lee was arrested and charged by information in Wyoming state court with five criminal counts arising out of his sexual activities with several minor males over a period of years. In pertinent part, Counts 3 and 5 of the information charged Lee with sexual assault in the third degree in violation of Wyoming Statutes Annotated §§ 6-2-304(a)(I), 6-2-306, and 6-10-102. App. at 7. Count 3 alleged "that between March 21, 1994 and September 21, 1995," Lee "inflicted sexual intrusion on a victim, when at the time [the victim] was less than 16 years of age and [Lee] w[as] at least four years

-2-

older than [the victim]."  App. at 41.  Count 5 "alleged that between October 4, 1996 and December 31, 1998," Lee "did unlawfully inflict sexual intrusion on a victim when the victim was less than 16 and [Lee] w[as] at least four years older . . . ."  Id. at 41-42.

Lee subsequently entered into a plea agreement with the prosecution, pursuant to which he agreed to plead guilty to Counts 3 and 5 in exchange for the prosecution's agreement to dismiss the remaining counts.  In the course of accepting Lee's guilty plea, the trial court asked Lee about the details of the two crimes to which he was pleading guilty.  With respect to Count 3, Lee admitted that the crime occurred "[a]pproximately between June and September of '95 at [his] house . . . in Gillette," Wyoming.  Id. at 66.  With respect to Count 5, Lee admitted that "between October 4, 1996 and December 31, 1998," he "performed oral sex with" a minor victim.  Id. at 52.   When asked by the trial court if he could indicate "more definitely . . . when the[] events occurred," he indicated he could not.  Id. at 73.  Lee did indicate, however, that he had sexual contact with the victim alleged in Count 5 on "[t]hree or four" occasions.  Id. at 76.

Following the entry of Lee's guilty plea, the prosecution moved to compel Lee to submit to a psychological evaluation.  After conducting a hearing on the motion, the trial court held it could not compel Lee to submit to such an evaluation.

The trial court sentenced Lee on May 24, 2000.  During the sentencing hearing, the prosecution presented testimony from William Heineke, a licensed professional counselor with expertise "in the area of inappropriate sexual activity between minors and adults."  Id. at 130.  Heineke opined, based upon his review of the case, that Lee was "in a high

-3-

risk category" in terms of likelihood of recidivism. Id. at 134. Heineke further opined

that Lee had a narcissistic personality disorder, id. at 144, and presented a "[h]igh risk" to

"post prepubescent minors." Id. at 146. At the conclusion of the evidence, Lee's counsel

argued that "Lee [wa]s amenable to treatment" or "rehabilitation . . . ." Id. at 159. The

trial court stated, in response: "How would I know that? He's not submitted to any kind

of evaluation. I can't take that on faith." Id. Lee's counsel then argued: "Correct, but I

think you also should not take the fact that he did not submit to an evaluation to the fact

that's he's not amenable to treatment or willing to do that. * * * [T]he fact that he chose

not to submit himself to an evaluation does not mean that he's not amenable to treatment

or that he would not cooperate with that." Id. at 159-60. Later, when the trial court

announced its sentence, it stated:

> Early on there was a request that you [Lee] submit to an evaluation by
> the State. The State requested that you do that. I reviewed the preceden[ts]
> from the United States Supreme Court and concluded I couldn't require you
> to do that, but that I could draw adverse inferences from your failure to
> participate in that.
>    * * *
> You might be amenable to treatment, but I don't know and I'm not going
> to take it on faith. Accordingly, I see my duty as one of to keep you
> isolated from potential victims for as long of period as I can do that.
>    It's the sentence of the Court that you'll be incarcerated on each count
> for a period of not less than 12 nor more than [15] years. The sentences
> will run consecutively.

Id. at 161-62. After announcing the sentences, the trial court then stated to Lee:

> Now, when you pled guilty I explained to you that you gave up your
> right to appeal from a legal sentence. I have, however, drawn inferences
> from your failure to cooperate in the evaluation process. That's an issue
> which you may want to appeal to the Supreme Court. You can discuss it

-4-

with your attorney. It's one that would be a permissible appeal even though you pled guilty. You should discuss that with [your attorney.]

Id. at 164.

On May 30, 2000, six days after the sentencing hearing, the prosecution filed a motion to correct illegal sentence as to Count 3. The motion was based on the prosecution's realization that the offense charged in Count 3 occurred in 1995 when the maximum penalty specified under Wyoming law for sexual assault in the third degree was five years' imprisonment. In other words, the prosecution's motion asserted that Lee had been illegally sentenced under a 1997 sentencing provision that was harsher than the one in place at the time the crime was committed.

The trial court held two hearings on the prosecution's motion. During the second such hearing, the trial court permitted the prosecution to "supplement the record on the factual basis with respect to Count 5" in order to establish that the acts underlying Count 5 occurred after July 1, 1997, when the Wyoming legislature increased the maximum penalty for sexual assault in the third degree from five to fifteen years.[1] Id. at 305. At the conclusion of the second hearing, the trial court resentenced Lee to a term of imprisonment of fifty-four to sixty months on Count 3, the maximum sentence available

---

[1] The evidence consisted of testimony from William Elger, a police officer with the City of Gillette, Wyoming, who testified that he spoke to the victims of Lee's crimes and they indicated an incident of sexual assault had occurred in the fall of 1997 at Lee's home. App. at 308-09. As noted by the district court, Elger's "testimony was very brief . . . ." App. at 374. The district court further concluded that Elger's testimony "simply repeated information provided in the affidavit of probable cause and the PSI [presentence investigation] report which indicated the sexual assault of [the victim in Count 5] occurred after July 1, 1997." Id.

under Wyoming law at the time Lee committed the acts underlying Count 3. The trial court again ordered that the sentences on Counts 3 and 5 would run consecutively.

Lee appealed to the Wyoming Supreme Court of Wyoming, arguing, in pertinent part, that "[t]he trial court abused its discretion" at the time of sentencing when it "formed adverse inferences against [him] for invoking his Fifth Amendment right against self-incrimination." Id. at 171. In support of that argument, Lee asserted that if he had "participated in the [psychological] evaluation, he likely would have been called upon to provide information that could [have] be[en] used against him at sentencing." Id. at 182. Thus, Lee argued, he "had a Fifth Amendment right to refuse to submit himself to such a potentially incriminating psychological evaluation." Id. In turn, Lee asserted, the trial court "overstepped [its] discretionary bounds when [it] effectively took this right away from" him by drawing an adverse inference from his refusal to submit to an evaluation. Id. In a separate argument, Lee also asserted that the trial court erred in allowing the prosecution to supplement the record in order to justify the sentence imposed with respect to Count 5. More specifically, Lee argued that this procedure "raised a double jeopardy issue." Id. at 267.

The Wyoming Supreme Court affirmed Lee's sentences on December 17, 2001.[2] Lee v. State, 36 P.3d 1133 (Wyo. 2001). In doing so, the Wyoming Supreme Court concluded the trial court acted properly in considering, for purposes of sentencing, Lee's

---

[2] The Wyoming Supreme Court did reverse and remand the case to the state district court for the limited purpose of reinstating the credit for time served which had been granted in the original sentence but omitted from the amended sentence.

refusal to submit to a psychological evaluation. Id. at 268-69. The Wyoming Supreme

Court also concluded there was no double jeopardy violation arising out of the trial

court's decision to allow the prosecution to provide supplemental evidence regarding

Count 5 for purposes of sentencing, noting that "the . . . case present[ed] neither multiple

prosecutions nor multiple punishments for the same offense." Id. at 268.

Lee then filed his federal habeas petition claiming (1) the state trial court violated

his privilege against self-incrimination by drawing an adverse inference from his refusal

to participate in a court-ordered psychological evaluation, (2) the prosecution violated the

constitutional prohibition against double jeopardy by supplementing the record after his

original sentencing hearing, and (3) his due process rights were violated because the date

of the offense underlying Count 5 was not established beyond a reasonable doubt. The

district court denied relief and dismissed the petition, but granted Lee a COA with respect

to the self-incrimination issue.

## II.

### A.  SELF-INCRIMINATION

Lee contends the trial court effectively penalized him for exercising his Fifth

Amendment privilege against self-incrimination and refusing to submit to a psychological

evaluation by drawing an adverse inference from that refusal at the time of sentencing.

Lee first raised this issue during the hearing on the prosecution's motion for a

psychological evaluation, arguing that the Supreme Court's decision in Mitchell v. United

States, 526 U.S. 314 (1999), "prevented the [trial] court from ordering an assessment and,

therefore, implicitly that precedent also prevented the court from drawing a negative

inference from his refusal to undergo such an assessment." Lee, 36 P.3d at 1141. The

trial court "distinguished Mitchell from [Lee's] situation because that case involved an

attempt to force a defendant, who had pleaded guilty, to testify regarding certain facts of

the crime with which she was charged." Id. Having so ruled, the trial court then

expressly indicated it was drawing an adverse inference from Lee's refusal to submit to a

psychological evaluation. Although it is not entirely clear from the transcript of the

sentencing hearing, it appears the trial court inferred from Lee's refusal that he was not

"amenable to treatment," and in turn concluded it needed "to keep [Lee] isolated from

potential victims for as long of period" as possible. App. at 162. In other words, it

appears that Lee's silence resulted in the trial court declining to reduce Lee's sentences on

the grounds of amenability to treatment.

Lee reasserted the Fifth Amendment issue on direct appeal. The Wyoming

Supreme Court, after briefly discussing the facts and holding of Mitchell, rejected Lee's

claim:

> [T]he [trial] court is mandated to gather and consider certain information
> prior to sentencing. W.R.Cr.P. 32(a) requires a PSI be done in every felony
> case and a report be submitted to the district court. That report must
> contain, among other facts, "[i]nformation about the history and
> characteristics of the defendant, including . . . any circumstances affecting
> the defendant's behavior that may be helpful in imposing sentence,"
> W.R.Cr.P. 32(a)(2)(A), as well as "[s]uch other information as may be
> required by the court." W.R.Cr.P. 32(a)(2)(D). This court has approved the
> use of psychological assessments, such as the one requested in this case, in
> the sentencing of sex offenders. (citation omitted). The district court in this
> case sought the assessment to "aid the court in determining whether or not

-8-

[Mr. Lee] presents a danger to others." We have approved of such considerations in the course of sentencing. (citation omitted). A defendant's failure to cooperate in the PSI is certainly a valid factor for a trial court to consider in contemplating the appropriate sentence. As we have said, sentencing requires consideration of the circumstances surrounding the crime and the character of the criminal. (citation omitted). This record reflected substantial evidence that supported the [trial] court's imposition of the maximum sentence allowed by statute, including the testimony of three victims who were groomed for exploitation by Mr. Lee, the unrefuted testimony of a state psychologist who reviewed all the information and concluded Mr. Lee presented a continuing risk to the community, and Mr. Lee's own statement of his guilt. Had Mr. Lee consented to the assessment, it might have provided information that he was amenable to treatment and supported a lesser sentence. It was his right to refuse the assessment and the district court's right to consider such refusal in determining the appropriate sentence.

Id.

Because Lee does not contend the Wyoming Supreme Court's decision involved an "unreasonable determination of the facts," see 28 U.S.C. § 2254(d)(2), the only way he can obtain federal habeas relief is to establish that the Wyoming Supreme Court's adjudication of his self-incrimination claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). To establish that the Wyoming Supreme Court's adjudication was "contrary to" clearly established federal law, Lee must demonstrate that the Wyoming Supreme Court "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "decide[d] [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). To establish that the Wyoming

Supreme Court's adjudication involved an "unreasonable application of" clearly established federal law, Lee must demonstrate that the Wyoming Supreme Court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] this principle to the facts" of his case. Id.

Lee asserts that the Supreme Court's decisions in Mitchell, Estelle v. Smith, 451 U.S. 454 (1981), and Griffin v. California, 380 U.S. 609 (1965), "provide the clear rules which govern this case." Aplt. Br. at 16. In Griffin, the Court held "that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." 380 U.S. at 615. Estelle and Mitchell extended that ruling to certain criminal sentencing contexts. Estelle involved a federal habeas petition filed by a state capital defendant who had been subjected to a pre-trial psychiatric examination in order to determine his competence to stand trial. The psychiatrist subsequently testified at the sentencing phase of the defendant's trial and opined "on the crucial issue of [the defendant's] future dangerousness . . . ." 451 U.S. at 467. The Supreme Court concluded that the psychiatrist's testimony violated the defendant's Fifth Amendment privilege against compelled self-incrimination. In doing so, the Supreme Court, in addition to holding the Fifth Amendment privilege applicable to the sentencing phase of a capital trial and to statements uttered in the context of a psychiatric examination, emphasized that a defendant's Fifth Amendment right against self-incrimination "is fulfilled only when a

-10-

criminal defendant is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." Id. at 468 (internal quotations omitted).

Mitchell involved a federal criminal defendant who pled guilty to conspiring to distribute cocaine and three counts of distributing cocaine within one thousand feet of a school or playground. At the sentencing hearing, the government presented a variety of evidence concerning the amount of cocaine that the defendant had distributed, including testimony from three of the defendant's co-conspirators. The district court, after hearing the government's evidence, "ruled that, as a consequence of her guilty plea, [the defendant] had no right to remain silent with respect to the details of her crimes." 526 U.S. at 319. Notwithstanding this ruling, the defendant refused to testify. Accordingly, the district court relied on the testimony of the defendant's co-conspirators and expressly stated on the record that it "held it against [the defendant] that [she] didn't come forward" and testify. Id. After her sentence was affirmed by the Third Circuit, the defendant sought and was granted review by the Supreme Court. The Court, in a 5-4 decision, reversed and remanded the case. In doing so, the Court held that (1) a guilty plea does not result in a waiver of the Fifth Amendment privilege against self-incrimination in the sentencing phase of the case, and (2) "in determining facts about the crime which bear upon the severity of the sentence," it is impermissible for a trial court to "drawn an adverse inference from the defendant's silence." Id. at 316-17. With respect to this latter holding, the Court noted that "[t]he normal rule in a criminal case is that no negative

-11-

inference from the defendant's failure to testify is permitted," and it "decline[d] to adopt an exception for the sentencing phase of a criminal case with regard to factual determinations respecting the circumstances and details of the crime." Id. at 327-28. The Court noted that "[t]he Government often has a motive to demand a severe sentence, so the central purpose of the privilege–to protect a defendant from being the unwilling instrument of his or her own condemnation–remains of vital importance." Id. at 329. In closing, the Court stated:

> The Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege. Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question. It is not before us, and we express no view on it.

Id. at 330.

The four dissenting justices in Mitchell criticized the majority's holding and its refusal to address whether its holding applied to situations other than where a sentencing court was "determining the facts of the offense":

> Which brings [us] to the greatest–the most bizarre–inconsistency of all: the combination of the rule that the Court adopts today with the balance of our jurisprudence relating to sentencing in particular. "[C]ourts in this country and in England," we have said, have "practiced a policy under which a sentencing judge [can] exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." (citation omitted). "[A] sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" (citation omitted). "Few facts available to a sentencing judge," we have observed, "are more relevant

-12-

to the 'likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society'" than a defendant's willingness to cooperate. (citation omitted). Today's opinion states, in as inconspicuous manner as possible at the very end of its analysis (one imagines that if the statement were delivered orally it would be spoken in a very low voice, and with the Court's hand over its mouth), that its holding applies only to inferences drawn from silence "in determining the facts of the offense." (citation omitted). "Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question" on which the majority expresses no view. (citation omitted). Never mind that we have said before, albeit in dicta, that "[w]e doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed upon the petitioner and denying him the 'leniency' he claims would be appropriate if he had cooperated." (citation omitted).

Of course the clutter swept under the rug by limiting the opinion to "determining facts of the offense" is not merely application of today's opinion to § 3E1.1, but its application to all determinations of acceptance of responsibility, repentance, character, and future dangerousness, in both federal and state prosecutions--that is to say, to what is probably the bulk of what most sentencing is all about. If the Court ultimately decides--in the fullness of time and after a decent period of confusion in the lower courts--that the "no inference" rule is indeed limited to "determining facts of the offense," then we will have a system in which a state court can increase the sentence of a convicted drug possessor who refuses to say how many ounces he possessed--not because that suggests he possessed the larger amount (to make such an inference would be unconstitutional!) but because his refusal to cooperate suggests he is unrepentant. Apart from the fact that there is no logical basis for drawing such a line within the sentencing phase (whereas drawing a line between guilt and sentencing is entirely logical), the result produced provides new support for Mr. Bumble's renowned evaluation of the law. Its only sensible feature is that it will almost always be unenforceable, since it will ordinarily be impossible to tell whether the sentencer has used the silence for either purpose or for neither.

If, on the other hand, the Court ultimately decides--in the fullness of time and after a decent period of confusion in the lower courts--that the extension of Griffin announced today is not limited to "determining facts of

the offense," then it will have created a system in which we give the sentencing judge access to all sorts of out-of-court evidence, including the most remote hearsay, concerning the character of the defendant, his prior misdeeds, his acceptance of responsibility and determination to mend his ways, but declare taboo the most obvious piece of firsthand evidence standing in front of the judge: the defendant's refusal to cooperate with the court. Such a rule orders the judge to avert his eyes from the elephant in the courtroom when it is the judge's job to size up the elephant.

The patent inadequacy of both of these courses with regard to determining matters other than the "facts of the offense" is not finessed by simply resolving, for the time being, not to choose between them. Sooner or later the choice must be made, and the fact that both alternatives are unsatisfactory cries out that the Court's extension of Griffin is a mistake.

Id. at 338-41.

Considering these three decisions together, we conclude it remains unanswered by the Supreme Court whether a sentencing court in a non-capital case may, for purposes other than determining the facts of the offense of conviction, draw an adverse inference from a criminal defendant's refusal to testify or cooperate.[3] Although Lee contends the decision in Estelle clearly indicates, or at least implies, that it is improper for a sentencing court to draw an adverse inference under such circumstances, Estelle is distinguishable because it was a capital case and the Supreme Court expressly emphasized "the gravity of the decision to be made at the penalty phase" in such a case. 451 U.S. at 463. Indeed,

_____

[3] Since Mitchell, the circuit courts have readily confined Mitchell to its stated holding, and have allowed sentencing courts to rely on, or draw inferences from, a defendant's exercise of his Fifth Amendment rights for purposes other than determining the facts of the offense of conviction. E.g., United States v. Warren, 338 F.3d 258, 263 (3d Cir. 2003) (holding that the denial of a sentencing reduction under U.S.S.G. § 5C1.2 based on a defendant's post-guilty-plea silence constituted a "denied benefit" rather than a penalty and thus avoids Fifth Amendment implications).

-14-

had Estelle resolved the issue, the Court in Mitchell clearly would have said as much (and the decision in Mitchell may have been altogether unnecessary). Instead, the majority in Mitchell limited the application of Estelle to the facts before it, i.e., "where the Government s[ought] to use [the defendant's] silence to infer commission of disputed criminal acts" for purposes of sentencing, 526 U.S. at 329, and expressly declined to consider whether Estelle applied where, as in Lee's case, the sentencing court sought to use Lee's silence for purposes other than determining the facts of the offense of conviction.

Thus, contrary to Lee's assertions, there was no "clearly established" federal law prohibiting what the trial court did in his case, i.e., drawing an adverse inference from Lee's refusal to submit to a psychological evaluation for purposes of determining whether Lee represented a continuing danger to society and/or whether he was amenable to rehabilitation. In turn, then, the Wyoming Supreme Court's decision affirming the trial court's actions was not "contrary to" or an "unreasonable application of" clearly established federal law.

## II. REQUEST FOR COA – DOUBLE JEOPARDY/DUE PROCESS

Lee also asks us to expand the COA initially granted by the district court in order to allow him to appeal the district court's denial of the double jeopardy and due process arguments he asserted in his federal habeas petition. In order for us to grant a COA, Lee must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, Lee must demonstrate "that reasonable jurists could debate whether

-15-

(or, for that matter, agree that) the [issue] should have been resolved in a different manner or that the issue[] . . . w[as] adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Lee's double jeopardy and due process arguments concern the sentence he received for Count 5. As previously noted, Count 5 charged Lee with sexual assault and alleged that between October 4, 1996 and December 31, 1998, Lee committed oral sex on a minor victim. At the time he pled guilty to Count 5, Lee admitted these allegations, including the date range, but was unable to indicate more definitely when the events occurred. Lee did indicate, however, that he had sexual contact with the victim alleged in Count 5 on three or four occasions. At the sentencing hearing on May 24, 2000, the district court sentenced Lee to not less than twelve nor more than fifteen years on Count 5. Notably, that sentence was within the fifteen-year maximum sentence authorized under Wyoming law for third-degree sexual assaults occurring after July 1, 1997, see Wyo. Stat. Ann. § 6-2-306(a)(iii), but far greater than the five-year maximum sentence authorized under Wyoming law for such crimes prior to July 1, 1997. On July 21, 2000, a hearing was held during which the prosecution was allowed to "supplement the record on the factual basis with respect to Count 5" in order to establish that the underlying facts of the crime occurred after July 1997. Although the trial court ultimately resentenced Lee on Count 3 because the acts underlying that count occurred prior to July 1, 1997, the trial court did not alter Lee's sentence on Count 5.

-16-

In his direct appeal, Lee argued that he was illegally sentenced on Count 5. Lee

also argued that the sentencing process on Count 5, in particular the trial court's decision

to allow the prosecution to present supplemental evidence regarding the dates when the

acts underlying Count 5 occurred, violated his right not to be subjected to double

jeopardy. The Wyoming Supreme Court rejected both of these arguments. The

Wyoming Supreme Court first concluded that "[b]ecause [Lee] specifically

acknowledged his guilt and that the crime occurred at any time between October 4, 1996,

and December 31, 1998," his sentence on Count 5 was not illegal. App. at 265. The

Wyoming Supreme Court also concluded that the supplemental evidence presented by the

prosecution regarding Count 5 was "superfluous because all the evidence offered already

existed in the sentencing record . . . ." Id. at 266. More specifically, the Wyoming

Supreme Court noted that "[t]he prosecution's sole 'supplemental' evidence consisted of

a police officer's testimony regarding the same information that was included in the

affidavit of probable cause." Id. Thus, the Wyoming Supreme Court concluded that

"while th[e] effort to supplement the record after the sentence was imposed may not have

been appropriate, no harm was done." Id. Finally, the Wyoming Supreme Court rejected

Lee's double jeopardy argument:

> Mr. Lee also complains that the sentencing process somehow raised a
> double jeopardy issue. However, this claim is supported merely by
> reference to Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi,
> the United States Supreme Court found a New Jersey state statute
> unconstitutional because it removed determination of one of the elements of
> a felony offense–whether the offense was committed with a biased
> purpose–from the jury for determination by the judge on the lesser standard
> of preponderance of the evidence. We fail to see how this authority has any

bearing on the circumstances of this case. (citation omitted).

> The double jeopardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. (citations omitted). When we analyze the protection against double jeopardy in terms of multiple prosecutions and cumulative punishments, we apply the statutory elements test defined in Blockburger v. United States, 284 U.S. 299 (1932). (citation omitted). However, the instant case presents neither multiple prosecutions nor multiple punishments for the same offense. Moreover, Mr. Lee has failed to cite persuasive authority or make cogent argument in support of his double jeopardy contentions. (citations omitted). Therefore, the issue merits no further consideration.

Id. at 267-68.

Lee reasserted these double jeopardy and due process arguments in his federal habeas petition (and included in his petition additional due process arguments that were not asserted in state court). Lee argued, in particular, that "where there has been no change related to the original conviction (either by a successful appeal of the conviction by the defendant or an appeal of the sentence by the State), the State should only be entitled to one opportunity to demonstrate that the sentence imposed is proper for the offense of conviction." App. at 27. "By adding to the record after the fact," Lee argued, "the State was permitted to justify a sentence three times longer than the sentence which was permissible for the offense of conviction based on the facts admitted at the time of the plea." Id. Lastly, citing Apprendi, Lee argued that "[t]he hearing at which the State supplemented the record" could "not be said to comport with the due process standards necessary to prove a 'fact' – the date of the offense – which tripled [his] maximum sentencing exposure." Id.

The district court rejected Lee's arguments:

> Mr. Lee's double jeopardy and due process arguments are misplaced. This Court agrees with the Wyoming Supreme Court that Apprendi is not applicable to this case and does not support either a double jeopardy or a due process claim. Mr. Lee was not subjected to multiple punishments for the same offense. Further, although a court may not increase a defendant's sentence once the defendant has a legitimate expectation of finality in his original sentence, (citation omitted), Mr. Lee's sentence was not increased by the trial court.

> By pleading guilty, a defendant admits involvement in the crime up to and including the last date alleged in the charge. (citation omitted). Mr. Lee pleaded guilty to sexual assault on LB [the minor victim in Count 5] between October 4, 1996, and December 31, 1998. The supplemental evidence offered by the state does not change the fact that Mr. Lee admitted that he sexually assaulted LB after the July 1, 1997 effective date of the penalty increase. Additionally, the evidence in the record at sentencing provided a factual basis that Mr. Lee sexually assaulted LB after July 1, 1997. (citation to record omitted). Mr. Lee has not shown that [the] Wyoming Supreme Court improperly rejected his due process or double jeopardy argument.

Id. at 390-91.

After reviewing the record on appeal, we conclude there is no basis for granting a COA to Lee on his double jeopardy and due process arguments. To begin with, the Wyoming Supreme Court found, as a matter of historical fact, that (1) Lee admitted to engaging in wrongful conduct after July 1, 1997, and (2) the "supplemental" evidence presented by the prosecution was "superfluous" because the same evidence was before the trial court at the time of Lee's sentencing. The first of these findings is amply supported by the record on appeal (in particular the transcript of Lee's guilty plea hearing), and thus Lee cannot establish that the finding amounted to an "unreasonable determination . . . in light of the evidence presented in the state court proceeding." 28

-19-

U.S.C. § 2254(d)(2). As for the second finding, Lee has not argued that it was unreasonable under § 2254(d)(2), nor has he even presented an adequate record on appeal to allow us to determine whether the evidence available to the trial court at the time of sentencing was the same as the supplemental evidence later presented by the prosecution.[4] Moreover, as noted by the Wyoming Supreme Court, Lee simply has not been subjected to multiple punishments for the same offense. E.g., North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (discussing the Double Jeopardy Clause of the Fifth Amendment). Rather, he was subjected to a single, twelve-to-fifteen year sentence for his admitted crime of engaging in oral sex with a minor at some point between July 1, 1997, and December 31, 1998.[5]

The district court's denial of federal habeas relief with respect to Lee's Fifth Amendment self-incrimination claim is AFFIRMED. Lee's request for an expanded COA is DENIED.

---

[4] Although Lee has included in his appendix a copy of the hearing at which the prosecution presented the "supplemental" evidence, he has not included all the materials available to the trial court at the time of sentencing

[5] Curiously, the dissent acknowledges that Lee pled guilty to committing an assault "on some date during the 27-month period stated in Count 5," but nevertheless asserts that the plea cannot be construed as an admission that an assault occurred on or after July 1, 1997. This latter assertion, however, flies in the face of the express terms of the indictment and Lee's admissions at the time of the plea hearing, and effectively and improperly narrows the terms of Lee's plea. We instead conclude, as did the Wyoming Supreme Court and the district court, that Lee's plea constitutes an admission of involvement in the crime up to and including the last date alleged in Count 5 of the indictment (i.e., December 31, 1998). See United States v. Broce, 488 U.S. 563, 570 (1989) (noting that a guilty plea "is an admission that [the defendant] committed the crime charged against him") (internal quotation marks omitted).

04-8116, *Lee v. Crouse*

**HARTZ**, Circuit Judge, concurring in part and dissenting in part:

I agree that Mr. Lee has not established a violation of his privilege against self-incrimination and is not entitled to a COA on his double-jeopardy claim. I would, however, grant a COA on his due-process claim and remand for further proceedings.

## I.     DISAGREEMENT WITH MAJORITY

My disagreement with the majority relates to what it means to plead guilty to a charge that a discrete offense was committed at some point within an extended time period. The majority believes that such a plea constitutes an admission that the defendant committed the offense at some time during the final two-thirds of that period. I cannot accept that proposition.

This point is important in the case before us because, as we all agree, it would have been improper to sentence Mr. Lee to 15 years' imprisonment on Count V unless he committed the sexual assault on or after July 1, 1997, the effective date of the statute increasing the maximum penalty from five years to fifteen. Mr. Lee's due-process claim, relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (handed down while his case was on direct appeal), is that he was improperly sentenced to 15 years' imprisonment because no jury found, and he did not admit, that the offense occurred after June 30, 1997.

The majority opinion avoids addressing the legal component of this contention by rejecting the factual premise. It concludes that the Wyoming Supreme Court's ruling that

"Lee admitted to engaging in wrongful conduct after July 1, 1997, . . . is amply supported by the record on appeal (in particular the transcript of Lee's guilt plea hearing) . . . ." Op. at 19. I disagree. Mr. Lee's plea to Count V did not constitute an admission that he committed the crime after July 1, 1997; nor did his statements at the hearing.

Count V states:

> On or between October 4, 1996, and December 31, 1998, in Campbell County, Wyoming, Defendant did unlawfully inflict sexual intrusion on a victim, when at the time of the commission of the act, the victim was less than sixteen (16) years of age and the actor was at least four (4) years older than the victim, specifically: Defendant did perform oral sex with LB, whose date of birth is October 4, 1985, in violation of Wyoming Statute §6-2-304(a)(i), §6-2-306, and §6-10-102, a felony.

Of the three statutes cited in the charge, §§ 6-2-306 and 6-10-102 relate to penalties. The offense is defined in § 6-2-304(a)(i), which states:

> (a) An actor commits sexual assault in the third degree if, under circumstances not constituting sexual assault in the first or second degree:
>     (i) The actor is at least four (4) years older than the victim and inflicts sexual intrusion on a victim under the age of sixteen (16) years . . . .

Thus, the offense alleged in Count V is a discrete act occurring at one point in time, not a continuing offense. As the Wyoming Supreme Court wrote on Mr. Lee's appeal:

> To obtain a conviction for sexual assault in the third degree of LB, the state needed only to prove the elements of the crime set out in § 6-2-304(a)(i); *e.g.*, the defendant committed sexual assault . . . by inflicting sexual intrusion on LB who was under the age of sixteen years and the defendant was more than four years older.

*Lee v. Wyoming*, 36 P.3d 1133, 1138 (Wyo. 2001).

The error of the Wyoming Supreme Court, seconded by the majority opinion, is in

saying, "Mr. Lee pleaded guilty to the charge of third-degree sexual assault on L.B., *admitting the crime occurred at anytime between the dates of October 4, 1996, through December 31, 1998*, a time frame which extended over a year and a half beyond the July 1, 1997, effective date of the new sentencing statute." *Id*. at 1138-39 (emphasis added). That is patently incorrect. Mr. Lee's plea did not admit that he committed the assault "at anytime" in the alleged period; it just admitted that he committed the assault at *some* time within the period. That time could well have been *before* July 1, 1997. The sentencing court would have acted properly in accepting the plea to Count V if Mr. Lee had admitted committing the offense specifically on October 5, 1996; on January 1, 1997; on June 30, 1997; or on any other date before July 1, 1997, and within the alleged period. (Of course, it could also have accepted the plea if Mr. Lee had admitted committing the offense on a specific date *after* July 1, 1997, and within the alleged period.) A simple plea to the indictment, without more, did not, and could not, establish that the offense occurred after July 1, 1997.

The indictment's reference to "on or between October 4, 1996, and December 31, 1998" was not, as in a conspiracy charge, for the purpose of charging that a continuing offense was ongoing throughout that entire period. Rather, as is often the case with child-sexual-abuse offenses, the victim was unable to give precise dates for the offense, so the indictment had to be imprecise concerning the time of the offense. *See, e.g.*, *State v. Altgilbers*, 786 P.2d 680, 693-95 (N.M. Ct. App. 1989). The indictment is saying that the grand jury could not be sure when the offense occurred, but it was some time within the

-3-

27-month period. Indeed, if the state could have proved, say, four specific incidents of sexual assault on L.B. on specific dates between October 4, 1996, and December 31, 1998, Mr. Lee could have been charged with four separate counts. In short, by pleading guilty to Count V, Mr. Lee was not admitting that he committed a sexual assault after June 30, 1997. He was admitting only that he committed an assault on some date during the 27-month period stated in Count V, and that date could just as well have been before July 1, 1997, as afterwards. To say that a plea to Count V constitutes an admission that the offense was committed after July 1, 1997, is like saying that one who pleads guilty to possession of more than an ounce of heroin thereby admits possessing a ton of heroin, or any other quantity exceeding an ounce. *Cf. United States v. Crockett*, 812 F.2d 626, 629 (10th Cir. 1987) (plea to charge of conspiracy to possess marijuana with intent to distribute did not admit that conspiracy involved more than 50 kilograms of marijuana).

Nor did Mr. Lee say anything at the plea hearing that added any greater precision to his admission. On the contrary, when asked by the judge if he could be any more definite, he said that he could not. Thus, there is no evidence to support a finding that Mr. Lee admitted at his plea hearing that he had committed a sexual assault after June 30, 1997. I would hold, as required by 28 U.S.C. § 2254(e)(i), that the Wyoming Supreme Court clearly erred in making that finding.

Believing as I do that Mr. Lee did not admit at his plea hearing that he had committed the charged offense after the effective date of the statute permitting imposition of a 15-year sentence, I would not summarily dispose of Mr. Lee's due-process claim by

-4-

denying a COA. Rather, as explained below, I would grant a COA on that claim because (1) he raises a substantial constitutional claim based on *Apprendi*; and (2) although I would hold that the claim is procedurally barred by failure to exhaust state remedies, a reasonable jurist might find no procedural bar when giving the matter the mere first look described in *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (the COA determination is a threshold inquiry that "does not require full consideration of the factual or legal bases adduced in support of the claims"). Thus, Mr. Lee has satisfied the requirements for a COA set forth in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (merits of claim and procedural bar must be debatable to justify COA).

I begin by addressing exhaustion. To analyze that issue I first describe Mr. Lee's argument to the Wyoming Supreme Court, then summarize his argument to this court (which I believe to have substantial merit), and then conclude that his state-court argument did not fairly present the argument he now makes. Finally, I turn to what I believe to be the proper disposition of this appeal.

## II. EXHAUSTION

AEDPA provides that a state prisoner's application for habeas relief may not be granted unless the prisoner has exhausted the remedies available in state court. 28 U.S.C. § 2254(b)(1)(A). In *Picard v. Connor*, 404 U.S. 270, 275-76 (1971), the United States Supreme Court explained: "We emphasize that the federal claim must be *fairly presented* to the state courts . . . . Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak

-5-

of the exhaustion of state remedies." *Id*. (emphasis added); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989) (discussing fair-presentation requirement).

## A.  Mr. Lee's State Appeal

The pertinent section of Mr. Lee's brief to the Wyoming Supreme Court carried the heading:  "The trial court committed error in allowing the State to supplement the factual basis after sentencing."  Aplee. App. at 24.  Over the course of the seven-page discussion under this heading, Mr. Lee argued the sentencing judge's lack of authority under the Wyoming Rules of Criminal Procedure to supplement the record; the judge's error in adding "extra innings to a baseball game," *id.* at 26; the judge's violation of Rule 11 of the Wyoming Rules of Civil Procedure, which relates to guilty pleas; and, finally, the alleged violation of double-jeopardy principles arising from the record supplementation.  The two paragraphs containing the double-jeopardy argument were as follows:

> The law changed and all parties failed to notice.  Those kinds of things can and do happen.  The problem is with how the prosecution and the trial court tried to sweep the mistakes under the rug by belatedly changing the facts to fit the action previously taken.  However, the State's failure to take into account a changed law is not a good reason to throw the Constitution out on its ear.  *Ignorance of the law is not an excuse*.  The Fifth Amendment gives very clear protection against double jeopardy in criminal prosecutions, and the state's supplementation of the record is an example of what the Fifth Amendment is designed to protect against.  By adding to the record after-the-fact, the State sought to justify a sentence three times longer than the sentence which was permissible under the facts as they existed at the time sentence was imposed.  That, in effect, violates double jeopardy.  See U.S. Const. Amends. V, XIV; Wyo.Const.Art: 1, § 11.
>
> In effect, the State sought a second bite at the sentencing apple

because it failed to ensure that a valid sentence was imposed in the first instance. The trial court, by permitting the State retroactively to justify the illegal sentence, with "supplemental" evidence, threw all notions of due process out the window. The hearing at which the State supplemented the record, with the introduction of vague hearsay evidence, can not be said to comport with the due process standards necessary to prove a 'fact' which would triple Mr. Lee's maximum sentencing exposure. *See, e.g., Apprendi v. New Jersey*, 120 S.Ct. 2348 (U.S. 2000) (full due process protections apply with regard to any fact which can increase a sentence beyond the otherwise available statutory maximum).

*Id.* at 29-30.

The Wyoming Supreme Court responded to Mr. Lee's citation of *Apprendi* by expressing puzzlement at its purpose:

Mr. Lee also complains that the sentencing process somehow raised a double jeopardy issue. However, this claim is supported merely by reference to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi*, the United States Supreme Court found a New Jersey state statute unconstitutional because it removed determination of one of the elements of a felony offense . . . from the jury for determination by the judge on the lesser standard of preponderance of the evidence. We fail to see how this authority has any bearing on the circumstances of this case.

36 P.3d at 1140. To resolve whether Mr. Lee's *Apprendi* claim before us was fairly presented to the Wyoming Supreme Court, I must proceed to determine what that claim is.

**B.    Mr. Lee's Present *Apprendi* Claim**

In *Apprendi* the defendant's sentences on two weapons charges were enhanced beyond the otherwise-applicable statutory maximum when the sentencing judge, in accordance with a state hate-crimes statute, found by a preponderance of the evidence that

the crimes were motivated by racial bias. 530 U.S. at 469-71. The United States Supreme Court reversed, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. As restated recently by the Supreme Court in *United States v. Booker*, 543 U.S. 220, 244 (2005), "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."

In his appeal to this Court, Mr. Lee states his *Apprendi* argument as follows:

> Critical sentencing facts must either be admitted by the defendant or proved by the state beyond a reasonable doubt because due process protections extend not only to determinations of guilt or innocence but also to sentencing determinations . . . . The date that this offense occurred was a fact that could have increased, and in fact did increase, Mr. Lee's sentence, for if the date were determined to be prior to the 1997 amendment his sentence would be one-third as long.

Aplt. Reply Br. at 7. The argument appears to have merit, certainly enough to satisfy the requirement for granting a COA. I note the critical importance of the date of the offense charged in Count Five. If the offense occurred before July 1, 1997, the maximum sentence was five years' imprisonment; for offenses on or after that date it was 15 years. Mr. Lee's plea provided no specific date but merely a range of possible dates that included a period before July 1, 1997. Because the date of the offense appears to be a fact "necessary to support a sentence exceeding the maximum authorized by the facts

-8-

established by [Mr. Lee's] plea of guilty," *Booker*, 543 U.S. at 244, one could argue that *Apprendi* requires the date to have been determined by a jury under a beyond-a-reasonable-doubt standard of proof.

## C. Was the Present Claim Fairly Presented in State Court?

Having engaged in this analysis, one might say that Mr. Lee raised the point in the sentence of his brief before the Wyoming Supreme Court that said:

> The hearing at which the State supplemented the record, with the introduction of vague hearsay evidence, can not be said to comport with the due process standards necessary to prove a 'fact' which would triple Mr. Lee's maximum sentencing exposure. *See, e.g., Apprendi v. New Jersey*, 120 S.Ct. 2348 (U.S. 2000) (full due process protections apply with regard to any fact which can increase a sentence beyond the otherwise available statutory maximum).

Aplee. App. at 29-30. In my view, however, Mr. Lee's tenable *Apprendi* claim was not fairly presented to the Wyoming Supreme Court. Yes, his brief cited *Apprendi*. And sometimes the application of the doctrine stated in a precedent is readily apparent in the case at hand. But this is not such a case. Particularly given the recentness of *Apprendi*, Mr. Lee's brief needed to assist the state court in seeing why it applied. Yet the *Apprendi* reference was buried in a discussion that appeared to be addressing double-jeopardy principles. Moreover, the quoted sentence said nothing about the specific requirements imposed by *Apprendi*— the jury as fact finder and proof beyond a reasonable doubt. On the contrary, the reference in the sentence citing *Apprendi* to "vague hearsay evidence" obscured the argument by suggesting that it was the nature of the evidence presented—rather than the identity of the fact finder or the burden of persuasion—that

was at stake. And the "*e.g.*" in the *"see, e.g."* citation signal is baffling, suggesting a more general point than *Apprendi*'s specific holding.

The "fairly present" requirement for exhaustion must be understood in light of AEDPA's approach to federal collateral review of state criminal proceedings. We do not overturn a state-court determination merely because we would rule otherwise. The determination must be unreasonable. Section 2254(d) states that a state prisoner's application for habeas corpus will not be granted unless the state-court decision was "contrary to" Supreme Court precedent (which would certainly be unreasonable), "involved an unreasonable application of" Supreme Court precedent, or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." And we must be even more deferential with respect to factual findings—in a § 2254 proceeding "a determination of a factual issue made by a State court shall be presumed to be correct." § 2254(e).

Likewise, an argument not addressed by the state court should not be considered to have been "fairly presented" unless it was unreasonable for the court to fail to appreciate that the argument had been made. Presenting issues to a court is not a game in which an appellant can score by saying just enough to alert a judge who had unlimited time to speculate on every possible issue that might be unearthed in the brief. The Wyoming Supreme Court, as its opinion clearly indicates, did not perceive Mr. Lee to be making the *Apprendi* claim that I believe to have substantial merit. On the contrary, the court was perplexed by the citation to *Apprendi*. Yet not only was it not unreasonable for the court

to miss the point (assuming, perhaps contrary to fact, that Mr. Lee's state-court brief actually intended to make the point), but I question whether I would have seen the point myself. After all, in this case we have had the benefit of having already been subjected to a two-year-long barrage of challenges under *Blakely v. Washington*, 542 U.S. 296 (2004), and *Booker* to sensitize us to *Apprendi* matters, as well as having received a better brief by Mr. Lee on this issue. Indeed, in oral argument before this court, Mr. Lee's counsel admitted that "at the time that this first came through the [Wyoming] Supreme Court[,] . . . the subsequent cases to *Apprendi* had not come down so maybe it was unclear to the Wyoming Supreme Court and unclear in possibly how it was raised." I would hold that Mr. Lee has not exhausted his *Apprendi* claim in state court because it was not fairly presented to the Wyoming Supreme Court.

On the other hand, this procedural bar is far from obvious. Because the determination whether to grant a COA "does not require full consideration of the factual or legal bases addressed in support of the claim," *Miller-El*, 537 U.S. at 337, I would have granted a COA on Mr. Lee's due-process claim because both the merits and the issue of procedural bar are at least debatable, *see Slack*, 529 U.S. at 484.

## III.    DISPOSITION OF THIS APPEAL

Deciding that Mr. Lee had not exhausted his state-court remedies would not end the matter. It would then be necessary to remand to the district court for further proceedings. First, the district court would need to determine whether it is still possible for Mr. Lee to present his *Apprendi* claim in state court. If not, his claim is deemed to

have been exhausted but it is procedurally defaulted. *See Coleman v. Thompson*, 501

U.S. 722, 735 n.1 (1990). If the claim has been defaulted in state court, the district court

may grant relief only if Mr. Lee "can demonstrate cause and prejudice or a fundamental

miscarriage of justice." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000)

(internal quotation marks omitted).

If, however, there is still a possibility of state-court relief, Mr. Lee must pursue

that avenue. In that event the district court could dismiss Mr. Lee's § 2254 claims. *See*

*Rhines v. Weber*, 125 S. Ct. 1528, 1532-33 (2005). But an adverse consequence of that

approach is that then he would likely be barred from returning to federal court because of

AEDPA's one-year statute of limitations on § 2254 applications. 28 U.S.C. § 2244(d)(1).

Although the limitations period is tolled while the applicant pursues relief in state court,

*see* § 2244(d)(2), federal-court proceedings do not toll the limitations period, *see Rhines,*

125 S. Ct. at 1533. Thus, if an applicant's claims are dismissed by the federal court

(particularly if the federal proceedings have continued for a number of months), he may

well lose forever any chance for federal review of those claims. *Id*.

To avoid such a result, federal courts on occasion have adopted the procedure of

staying and abating the habeas claim. Under this procedure a district court stays the

habeas application and holds it in abeyance while the applicant pursues the unexhausted

claims in state court. *Id*. at 1534. Once the applicant exhausts state-court remedies, the

district court will lift the stay and allow the applicant to return to federal court. *Id*. The

Supreme Court recently approved the practice but subjected it to strict limitations. *Id*. at

1535. The procedure may be used only "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court" and the unexhausted claims are not "plainly meritless." *Id*. Mr. Lee's *Apprendi* claim is not plainly meritless. The district court, however, is better positioned than this court to determine whether stay-and-abeyance is appropriate in this case, and it should be the tribunal to address the matter in the first instance.